UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEXIS ROCHA, a married woman,<br><br>   Plaintiff,<br><br>   v.<br><br>ASURION, LLC, a foreign limited liability company,<br><br>   Defendant. | NO. 2:24-CV-0017-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND PLAINTIFF'S MOTION TO REMAND |

BEFORE THE COURT are Defendant's Motion to Compel Arbitration (ECF No. 5) and Plaintiff's Motion to Remand (ECF No. 7). These matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, both Defendant's Motion to Compel Arbitration (ECF No. 5) and Plaintiff's Motion to Remand (ECF No. 7) are DENIED.

//

//

ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND PLAINTIFF'S MOTION TO REMAND ~ 1

## BACKGROUND

The Motion to Remand and Motion to Compel Arbitration arise out of an employment dispute between Plaintiff and Defendant. After working through the interview process, Plaintiff, Ms. Alexis Rocha, received an email containing an offer of employment from Defendant, Asurion, LLC ("Asurion"), on March 5, 2020. ECF No. 9 at 2. The email contained a link to the details of the offer but no mention of the company's mandatory arbitration agreement. ECF No. 10 at 8. After her acceptance of employment, Ms. Rocha then received an email from Asurion on March 6, 2020, explaining that her candidacy was contingent upon successfully completing a background test and drug test. *Id*. at 10. This "pre-employment" contact from Asurion also did not contain any mention of an arbitration policy. Then on March 18, 2020, Ms. Rocha received an email from Asurion congratulating her on completing her "pre-employment" requirements and advising her of her start date and hiring manager. *Id*. at 13. The March 18 email made reference to "the training team," that she could expect to hear from prior to her start date, but still, no mention of an arbitration clause. *Id*.

On March 23, 2020, the first day of her new job, Ms. Rocha joined a training video conference with approximately twenty-five other new employees. ECF No. 9 at 3. Seemingly during the video conference, the new employees were instructed to log into a web portal to complete onboarding paperwork and were told that the

information session could not continue until everyone had electronically signed all the documents included. *Id*. The documents contained twenty-three pages consisting of six forms, including a thirteen page "Employment, Confidential Information, Invention Assignment, and Arbitration Agreement," nestled at the end. In relevant part, the Arbitration Agreement stated:

> In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes and my receipt of the compensation, pay raises and other benefits paid to me by the Company, at present and in the future, the Company and I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder or non-ERISA benefit plan of the Company or the plan's sponsors, fiduciaries, affiliates or agents in their capacity as such or otherwise) arising out of relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this Agreement but excluding any issues related to the enforceability of this Agreement, shall be subject to binding arbitration under the arbitration rules set forth in the Employment Arbitration Rules of the American Arbitration Association ("AAA") (the "Rules"). The Rules are available on line at the AAA's web site: www.adr.org The Rules also may be obtained upon request to the NEWAsurion Legal Department, 648 Grassmere Park, Suite 300, Nashville, Tennessee 37211.

ECF No. 6-1 at 6.

The Arbitration Clause included an affirmative waiver of Ms. Rocha's right to a jury trial related to claims stemming from an employment relationship or termination. *Id* at 8. While the clause also bound Asurion to arbitration in the event of a dispute, it also reserved personal jurisdiction to courts located in

ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND PLAINTIFF'S MOTION TO REMAND ~ 3

1    Davidson County, Tennessee, "for any lawsuit filed there against [the employee]
2    by the Company arising from or relating to this Agreement." *Id*. at 8–9.  Should a
3    dispute be heard in a Tennessee Court, the Agreement denoted that the law of the
4    state the employee resided in would apply.  *Id*.  The agreement also stated that the
5    employee agreed that they were "provided an opportunity to seek the advice of an
6    attorney of [her] choice before signing this Agreement." *Id*. at 8.  Ms. Rocha
7    signed all six documents, including the "Employment, Confidential Information,
8    Invention Assignment, and Arbitration Agreement." ECF No. 5 at 3.

9    While still employed at Asurion, Ms. Rocha began maternity leave on
10   January 4, 2022.  ECF No. 9 at 5.  She maintains she took protected time off under
11   the Washington Family Leave Act and expected to return to work on April 23,
12   2022.  *Id*.  However, Asurion informed her on March 14, 2022, that her maternity
13   leave had expired.  *Id*.  While she attempted to establish the status of her approved
14   time off with Asurion and the company's third-party administrator for employee
15   leave, on April 12, 2022, Ms. Rocha received an email notice of her termination
16   for unapproved absence.  *Id*.

17   Ms. Rocha brought claims under the Washington Family Leave Act
18   ("WFLA") and Washington Law Against Discrimination ("WLAD") against
19   Asurion.  ECF No. 1-3 at 4–5.  The matter was removed based on a theory of 28
20   U.S.C. § 1332(a) diversity jurisdiction on January 22, 2024.  *See* ECF No. 1.

ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND PLAINTIFF'S MOTION TO REMAND ~ 4

Defendant has requested the Court enforce the arbitration agreement in the employment contract. ECF 5 at 3. Plaintiff has filed a motion to remand because she argues that diversity between parties has not been demonstrated. ECF No. 8 at 2.

## DISCUSSION

### I. Motion to Remand

Under 28 U.S.C. § 1332(a), federal courts have jurisdiction over matters between citizens of different states where the amount in controversy exceeds $75,000. Remand is improper because Asurion has made a sufficient showing that diversity exists among the parties, and the amount in controversy is likely more than $75,000. As to diversity of citizenship, Asurion is a limited liability company, and therefore is "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006). Defendant asserts that it is held by a single member, Lonestar Intermediate Holdings, LLC, which is a Delaware corporation and with a principal place of business in Tennessee. ECF No. 12 at 3. Lonestar Intermediate Holdings, LLC, is in turn held by a single member, Lonestar Intermediate Super Holdings, LLC, which is a Delaware limited liability company and asserts it has a principal place of business in Tennessee. *Id*. Finally, Lonestar Intermediate Super Holdings, LLC, also has one member, Asurion Group, Inc., which is incorporated

1  in Delaware and has a principal place of business in Tennessee. *Id*.

2  Ms. Rocha does not challenge the validity of the citizenship of these entities, nor does she challenge that she is a citizen of Washington State and therefore diverse from Asurion. ECF No. 8 at 2. However, the Court will entertain future challenges to citizenship should information come to light in potential discovery that refutes total diversity of citizenship amongst the parties.

While Ms. Rocha's Complaint does not claim a specific amount in damages, the Motion to Remand also does not dispute that her damages will equate to at least $75,000. ECF No. 8 at 3. However, when the Complaint is devoid of the monetary relief requested, "'the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.'" *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 416 (9th Cir. 2018) (internal citation omitted). Asurion alleges that because Ms. Rocha seeks "lost past and future wages and benefits," the amount in controversy will likely exceed the required $75,000 based on factually similar awards of damages for violations of the WFLA and WLAD. ECF No. 1 at 7. Based on recent caselaw cited by Defendant demonstrating damages awarded well above $75,000, and a lack of objection from Plaintiff, the Court finds likely that the amount in controversy will satisfy 28 U.S.C. § 1332(a). *Id*.

Rather, than contesting the actual amount in controversy, the Motion to

1  Remand states that removal is defective because Asurion has not shown each
2  member of the LLC could be liable for $75,000.  ECF No. 8 at 3.  "Aggregation
3  has been permitted only (1) in cases in which a single plaintiff seeks to aggregate
4  two or more of [her] own claims against a single defendant and (2) in cases in
5  which two or more plaintiffs unite to enforce a single title or right in which they
6  have a common and undivided interest."  *Snyder v. Harris*, 394 U.S. 332, 335
7  (1969).  As already discussed, it seems likely that if Asurion is found liable, the
8  combined WLAD and WFLA claims will exceed $75,000 in damages.  However,
9  this possibility has no bearing on individual members of Asurion as an LLC.
10 While Plaintiff is correct that theoretically, Defendant could be composed of
11 various members, one feature of forming a business venture as an LLC or
12 corporation is that the artificial entity created after formation shields the individual
13 members from personal liability in most disputes.  *Chadwick Farms Owners Ass'n*
14 *v. FHC LLC,* 166 Wash. 2d 178, 187 (2009), as corrected (Sept. 14, 2009).  Here,
15 while individual members of the Asurion are relevant to the question of
16 citizenship, they are not named as defendants and therefore not currently liable for
17 any potential damages that may derive.  Because there is no individualized
18 liability, any discussion of member "exposure" for purposes of the amount in
19 controversy is irrelevant to a 28 U.S.C. § 1332(a) analysis.
20         Based on the diversity of citizenship among the parties and likely amount in

ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND PLAINTIFF'S MOTION TO REMAND ~ 7

controversy, the Court has 28 U.S.C. §1332(a) jurisdiction and Plaintiff's Motion to Remand (ECF No. 8) is denied. However, Plaintiff may renew a motion to remand should discovery uncover facts that call into question either the citizenship of the parties or the amount in controversy.

## II. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects "both a liberal federal policy favoring arbitration ... and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations and quotation marks omitted). Thus, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Id*. (internal citation omitted).

In determining whether to compel arbitration, generally the court must determine two threshold issues: (1) whether there is an agreement to arbitrate between the parties and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The "party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party." *Glow v. Cent. Pac. Mort. Corp.*, 560 F. Supp. 2d 972, 978 (E.D. Cal. 2008). This burden is "substantial." *Id*. at 979. "[T]here

should be an express, unequivocal agreement to that effect." *Three Valleys Mu. Water Dist. V. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (citation omitted). In determining the existence of an arbitration agreement, state-law principles of contract interpretation apply, and courts should give "due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). Courts apply the summary judgment standard and view the evidence in the light most favorable to the nonmoving party because an order compelling arbitration "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortgage Service, Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (citation omitted).

Defendant requests the Court enforce the arbitration agreement that Plaintiff signed on her first day of work. ECF No. 5 at 6. While Plaintiff does not dispute that the matter at hand would be covered by the arbitration agreement, she opposes the enforcement of the agreement on the grounds that it is both procedurally and substantively unconscionable. ECF No. 9 at 6. Under Washington law, whether a contract is unconscionable is a question of law. *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1174 (W.D. Wash. 2002) (citing *Nelson v. McGoldrick*, 127 Wash. 2d 124, 131 (1995)). Substantive unconscionability challenges a clause or

1 term in a contract, alleging the term to be one-sided or overly harsh. *Id*.

2 Procedural unconscionability challenges the process of forming a contract. *Id*.

3 The burden of proving that a contract is unconscionable rests with the party

4 opposing the contract. *Id*.

5     A. Procedural Unconscionability

6     In determining whether an arbitration agreement is procedurally

7 unconscionable, courts look to "(1) the manner in which to agreement was entered,

8 (2) whether the plaintiff had a reasonable opportunity to understand the terms of

9 the agreement, and (3) whether the important terms were "hidden in a maze of fine

10 print." *Zuver v. Airtouch Commc'ns, Inc*., 153 Wash. 2d 293, 303 (2004).

11 Additionally, courts look to whether the agreement was an adhesion contract,

12 which may be the case when the agreement is a standard form printed contract,

13 prepared by one party and submitted to the other on a "take it or leave it" basis,

14 and "no true equality of bargaining power" exists between the parties. *Id*. at 304

15 (citation omitted). The fact that an agreement is an adhesion contract does not

16 necessarily render it procedurally unconscionable. *Id*. Where a party has a

17 reasonable opportunity to consider the terms of the agreement and the terms are

18 fully disclosed, courts generally will not find procedural unconscionability, even

19 though there may have been unequal bargaining power. *See, e.g.*, *id*.; *Luna*, 236 F.

20 Supp. 2d at 1177. This is especially true when acceptance of an arbitration

agreement is a condition prior to employment, rather than a condition of continued employment. *See Mayne v. Monaco Enterprises, Inc.*, 191 Wash. App. 113, 122 (2015).

Ms. Rocha argues that the manner in which she entered into the agreement was unconscionable because she lacked meaningful choice when signing the contract. ECF No. 9 at 7. She cites to *Burnett v. Pagliacci Pizza, Inc.*, 196 Wash. 2d 38, 56–57 (2020), in which a prospective employee signed a one-page form that did not mention arbitration, but instead referenced that employees were expected to adhere to the rules outlined in an employee handbook. The handbook, which the plaintiff received after beginning employment, contained the arbitration clause. *Id.* There, the Washington State Supreme Court determined that the plaintiff lacked meaningful choice because he did not have a reasonable opportunity to understand the arbitration policy before beginning employment as he had no way of knowing he was agreeing to arbitration. *Id.* at 57. Ms. Rocha argues her case is like *Burnett* because none of the information she received from Asurion prior to becoming an employee contained information about arbitration. ECF No. 9 at 7. Further, when she was required to enter into the agreement, she was subjected to time pressure to sign the first day documents, and the arbitration agreement did not appear until near the end of the forms. *Id.* at 8. She was unable to meaningfully review the document or seek the advice of counsel, and thus the arbitration clause is

procedurally unconscionable. *Id*. at 9.

Asurion argues that Ms. Rocha entered into the agreement prior to beginning her employment began, as evidenced by the first page of the "Employment, Confidential Information, Invention Assignment, and Arbitration Agreement," which states, "As a condition of my employment with Asurion, LLC . . . I agree to the following . . ." ECF No. 6-1 at 2. Asurion posits that Ms. Rocha was not an employee until after completing the onboarding training and signing the documents, and therefore a softer standard should be applied to the agreement. ECF No. 5 at 14. Further, it argues that unlike *Burnett,* Plaintiff understood what she was signing as part of the document's title is "Arbitration Agreement," and the clause stated that she agreed she had been provided adequate time to review it. ECF No. 14 at 3.

This case is somewhere in the middle of both party's perspectives. The Court does not find this case entirely analogous to *Burnett*, as Plaintiff was presented with an arbitration agreement that contained the substantive terms of what she was agreeing to. However, the Court is also not persuaded that Plaintiff was not an employee at the time of signing the document. While true that Ms. Rocha was a very new employee, the communication she received up until the point of her training leaves the impression that passing her drug and background tests would confirm her employment. ECF No. 10 at 13 ("Congratulations, you

have successfully completed all your pre-employment requirements and are ready to start!"). She received an Asurion login username and a company email address prior to her training day. *Id*. at 14.

Instead, this matter is similar to *Mayne v. Monaco Enterprises, Inc*, in which an employee was coerced into signing an arbitration agreement after he had been with the company for several years. 191 Wash. App. at 120. The plaintiff had previously been given thirty days to sign an optional arbitration agreement, but was presented with a new, mandatory agreement with seemingly no time to consider. *Id*. at 120. The court in *Mayne* compared the facts before it with those in *Zuver v. Airtouch Communications, Inc*, 153 Wash.2d at 304, in which an employee was presented with an arbitration clause prior to beginning the job and given fifteen days to review it before signing. Contrasting *Zuver* with *Mayne*, the Court found that the language of the agreement would leave the plaintiff in a position of choosing between signing away his rights to a jury trial or losing his already established job and was therefore procedurally unconscionable. 191 Wash. App. at 121. Relevant for the set of facts at hand, the court noted "[p]erhaps the employee could be offered a reasonable time to sign before voluntarily leaving employment, or could be offered some incentive as consideration for the waiver of the constitutional right." *Id*. at 122; *cf. Burgess v. Buddy's Nw. LLC*, No. C15-5785 BHS, 2016 WL 7387099, at *3 (W.D. Wash. Dec. 21, 2016) ("The fact that

ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND PLAINTIFF'S MOTION TO REMAND ~ 13

1 [Plaintiff] was given only one day to inspect the agreement is concerning. Nonetheless, under the entirety of the circumstances, the Court finds it is insufficient to support a finding that defendants exerted any "undue pressure" on Plaintiff.").

Here, the arbitration agreement was not buried in a "maze of fine print," but instead was labelled and offset from other forms employees were asked to sign. ECF No. 6-1 at 2. Yet, Plaintiff asserts she was not alerted to the arbitration agreement until after she was considered an employee. ECF No. 9 at 7. When it was presented, she felt constrained by the time pressure to sign the documents so that the cohort of new employees could continue with the training process. *Id*. at 8. In considering the facts surrounding a Motion to Compel Arbitration through the lens of a summary judgment standard, and therefore in the light most favorable to Ms. Rocha, the Court finds the arbitration agreement procedurally unconscionable. *Hansen*, 1 F.4th at 670; *see Scott v. Harris*, 550 U.S. 372, 378 (2007) ("The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party."). Ms. Rocha asserts that she was not given any chance to consider the arbitration agreement, either before or after employment, and therefore was denied a meaningful choice in signing the agreement. She did not receive the enforceable thirty days to review the agreement like in *Mayne* or even the one day of review that the court considered "concerning" in *Burgess*. Because

1  there was seemingly limited time to review and understand the form in light of the
2  need to continue the first day training, undue pressure was applied while Ms.
3  Rocha signed the agreement. Therefore, the Court declines to enforce the
4  arbitration agreement.

5        *B. Substantive Unconscionability*

6        The Court need not reach the issue of substantive unconscionability, but it is
7  skeptical of the one-sided nature of the arbitration clause's personal jurisdiction
8  provision. *See Saleemi v. Doctor's Assocs., Inc.*, 176 Wash. 2d 368, 384, 292 P.3d
9  108, 116 (2013) (internal citations omitted) ("A forum selection clause is
10 presumptively valid unless it violates fundamental public policy of the State of
11 Washington and Washington's interest in the determination of the issue materially
12 outweighs the chosen state's interest, among other things."); *see also Nagrampa v.*
13 *MailCoups, Inc.*, 469 F.3d 1257, 1285 (9th Cir. 2006) (discussing the uneven
14 nature of a clause that reserved a convenient judicial forum for the creator of the
15 arbitration agreement to enforce intellectual property rights while leaving the
16 signee to bring their claims in an arbitral forum.). Though the agreement states
17 that both Ms. Rocha and Asurion are subject to arbitration, the Court is wary of the
18 reservation of courts in Davidson County, Tennessee to allow Defendant the
19 exclusive ability to enforce rights stemming from the agreement. ECF No. 14 at 5.
20 //

ORDER DENYING DEFENDANT'S MOTION TO COMPEL
ARBITRATION AND PLAINTIFF'S MOTION TO REMAND ~ 15

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Compel Arbitration (ECF No. 5) is **DENIED**.

2. Plaintiff's Motion to Remand (ECF No. 7) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

DATED March 19, 2024.



THOMAS O. RICE
United States District Judge